**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAMES SHERIDAN,<br><br>Plaintiff,<br><br>v.<br><br>CIMAREX ENERGY CO., THOMAS E. JORDEN, JOSEPH R. ALBI, PAUL N. ECKLEY, HANS HELMERICH, KATHLEEN A. HOGENSON, HAROLD R. LOGAN, JR.,FLOYD R. PRICE, MONROE W. ROBERTSON, LISA A. STEWART, FRANCES M. VALLEJO,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.______________<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff James Sheridan ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Cimarex Energy Company ("Cimarex" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Cabot Oil & Gas Corporation ("Cabot"), through Double C Merger Sub, Inc. ("Merger Sub"), will acquire the Company (the "Proposed Transaction").[1]

2. On May 24, 2021, Cimarex and Cabot jointly announced their entry into an Agreement

---

[1] Non-party Cabot is a Delaware corporation with its principal place of business in Houston, Texas. Cabot's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "COG." Non-party Merger Sub is a wholly owned subsidiary of Cabot.

and Plan of Merger dated that same day (the "Merger Agreement"). That agreement provides Cimarex stockholders will receive 4.0146 of Cabot shares for each Cimarex common share held. (the "Merger Consideration").[2]

3. On August 23, 2021, Cimarex filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Cimarex stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who

[2] The approximate value of the Proposed Transaction is $17 billion.

has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and is and has been at all times relevant hereto, a continuous stockholder of Cimarex.

10. Defendant Cimarex is a Delaware corporation with its principal place of business at 1700 Lincoln Street, Suite 3700, Denver, CO 80203. The Company's common stock trades on the NYSE under the ticker symbol "XEC."

11. Defendant Thomas E. Jorden ("Jorden") is and has been a director of Cimarex at all times relevant hereto. In addition, Jorden serves as the Chairman of the Company Board, Chief Executive Officer ("CEO"), and President.

12. Defendant Joseph R. Albi ("Albi") has been a director of the Company at all relevant times.

13. Defendant Paul N. Eckley ("Eckley") has been a director of the Company at all relevant times.

14. Defendant Hans Helmerich ("Helmerich") is and has been a director of Cimarex at all times relevant hereto.

15. Defendant Kathleen A. Hogenson ("Hogenson") is and has been a director of Cimarex at all times relevant hereto.

16. Defendant Harold R. Logan, Jr. ("Logan") is and has been a director of Cimarex at all times relevant hereto.

17. Defendant Floyd R. Price ("Price") has been a director of the Company at all relevant times.

18. Defendant Monroe W. Robertson ("Robertson") is and has been a director of Cimarex at all times relevant hereto.

19. Defendant Lisa A. Stewart ("Stewart") is and has been a director of Cimarex at all times relevant hereto.

20. Defendant Frances M. Vallejo ("Vallejo") is and has been a director of Cimarex at all times relevant hereto.

21. Defendants identified in paragraphs 11-20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

22. On May 24, 2021, Cimarex and Cabot jointly announced in relevant part:

> **HOUSTON and DENVER, May 24, 2021 – Cabot Oil & Gas Corporation ("Cabot") (NYSE: COG) and Cimarex Energy Co. ("Cimarex") (NYSE: XEC)** today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger of equals. The combination will bring together two industry-leading operators with top-tier oil and natural gas assets to create a diversified energy leader that is positioned to drive enhanced free cash flow generation and returns for investors through market cycles.
>
> Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned. The exchange ratio, together with closing prices for Cabot and Cimarex on May 21, 2021, reflects an enterprise value for the combined companies of approximately $17 billion. Upon completion of the transaction, Cabot shareholders will own approximately 49.5% and Cimarex shareholders will own approximately 50.5% on a fully diluted basis.
>
> "The combination of Cabot and Cimarex will create a free cash flow focused, diversified energy company with the scale, inventory and financial strength to thrive across commodity price cycles," Dan O. Dinges, Chairman, President and CEO of Cabot. "The combined business will be overseen by an experienced Board and a management team that is committed to a prudent strategy built on disciplined capital investment, strong free cash flow generation and increasing returns to shareholders. With its premier assets, increased resource diversity and a strong financial foundation, the company will be well positioned to deliver long-term value creation for its

shareholders and other stakeholders."

"This transformational merger will combine our top-tier assets and advance our shared focus on delivering superior returns for investors," said Thomas E. Jorden, Chairman, President and CEO of Cimarex. "We're building an even more resilient platform with greater financial strength in order to deliver sustainable, through-cycle returns on and of capital. We view commodity, geography and asset diversification as strategic advantages that will drive more resilient free cash flow and long-term value creation. We are aligned on our commitment to ESG and sustainability and look forward to bringing our talented teams together to unlock the tremendous potential of this compelling combination."

**Strategic and Financial Benefits of Creating a Free Cash Flow Focused, Diversified Oil & Gas Producer**

- **Premier Multi-Basin Exposure Will Enhance Scale, Diversity and Capital Optionality:** With Cabot's approximately 173,000 net acres in the Marcellus Shale and Cimarex's approximately 560,000 net acres in the Permian and Anadarko basins, the combined business will have a multi-decade inventory of high-return development locations in the premier oil and natural gas basins in the United States.

- **Attractive and Sustainable Free Cash Flow Profile:** Executing a disciplined capital allocation and reinvestment strategy, the combined business will be positioned to capitalize on its high-quality assets and diversification to drive through-cycle free cash flow generation across a wide range of commodity price scenarios. The company's low-cost and capital efficient inventory is expected to support its robust, cumulative free cash flow outlook of approximately $4.7 billion of free cash flow from 2022 to 2024 based on $55 per barrel WTI oil prices and $2.75 per MMBtu NYMEX natural gas prices.

- **Positioned to Accelerate the Return of Capital to Shareholders:** The combined business will be well positioned to deliver enhanced capital returns to shareholders across a full range of market conditions through a multi-faceted program offering a sustainable base dividend that is positioned to grow over time, a variable dividend and a special dividend. The new business is expected to have an annual base dividend of $0.50 per share (representing a forward dividend yield of 2.8%), which is paid quarterly and plans to supplement the base dividend with a quarterly variable dividend to achieve a target capital return of at least 50% of quarterly free cash flow, with the first payment expected in the first quarter of 2022. The combined business also plans to declare and pay a $0.50 per share special dividend to all common shareholders of the combined business promptly after the closing of the transaction.

- **Substantial Cost Saving Opportunity:** The companies are targeting annual general and administrative cost synergies of $100 million beginning within 18 months to two years following the closing.

- **Strong Balance Sheet:** The combined business is expected to have a strong capital structure with minimal near-term debt maturities and a low cost of capital. Upon

closing, the combined business is anticipated to have pro forma liquidity of $2.2 billion and will target a net debt-to-EBITDAX ratio of less than 1.0x. This strong financial foundation and broader scale is expected to provide flexibility and optionality for capital deployment.

- **Commitment to ESG and Sustainability:** Cabot and Cimarex share commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on the two companies' ongoing ESG efforts by, among other things, continuing to link executive compensation to ESG performance and maintaining strong board oversight of ESG risks and programs. The combined business is expected to report sustainability metrics pursuant to SASB and TCFD standards.

**Headquarters, Leadership and Governance**

The combined business, which will operate under a new name, plans to be headquartered in Houston and maintain its regional offices.

Upon closing, Mr. Dinges will serve as Executive Chair of the Board of Directors of the newly combined business and Mr. Jorden will lead the company as CEO and will serve on the Board of Directors. Scott Schroeder, Cabot's current Chief Financial Officer, will serve as CFO of the combined business. The remainder of the company's leadership team will include executives from both Cabot and Cimarex.

The Board of Directors of the company will be composed of five directors from the current Cabot Board of Directors, including Mr. Dinges, and five directors from the current Cimarex Board of Directors, including Mr. Jorden.

**Timing and Approvals**

The transaction is expected to close in the fourth quarter of 2021, subject to regulatory clearance, the approval of Cabot and Cimarex common shareholders and the satisfaction of other customary closing conditions.

Both Cabot and Cimarex intend to continue paying base quarterly cash dividends through closing.

* * * *

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Cabot and Baker Botts L.L.P. is serving as its legal counsel. Tudor, Pickering, Holt & Co. is serving as financial advisor to Cimarex and Wachtel, Lipton, Rosen & Katz is serving as its legal counsel.

**<u>The Proxy Statement Contains Material Misstatements or Omissions</u>**

23. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Cimarex' stockholders. The Proxy Statement misrepresents or omits

material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

24. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections; and (b) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Tudor, Pickering, Holt & Co. ("Tudor Pickering").

***Material Omissions Concerning the Company's Financial Projections***

25. The Proxy Statement omits material information regarding the Company's financial projections, including the line items underlying: (a) EBITDAX; and (b) Unlevered Free Cash Flow.

26. The Proxy Statement omits material information regarding Cabot's financial projections, including the line items underlying: (a) EBITDAX; and (b) Free Cash Flow (Pre-Dividend).

27. The omission of this information renders the statements in the "Cimarex Unaudited Forecasted Financial Information" and "Cabot Unaudited Forecasted Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Tudor Pickering' Financial Analyses***

28. The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by the Company's financial advisor, Tudor Pickering.

29. The Proxy Statement describes Tudor Pickering' fairness opinion and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding these analyses. As a result, Cimarex stockholders cannot assess what significance to place on Tudor Pickering' fairness opinion in determining whether to vote

in favor of the Proposed Transaction or seek appraisal.

30. With respect to Tudor Pickering's *Net Asset Value Analysis*, the Proxy Statement fails to disclose: (a) all line items used to calculate unlevered free cash flow, (b) the individual inputs and assumptions underlying the discount rates, (c) the values of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources, the future effects of hedging, and the effects of general and administrative expenses, taxes, and non-drilling and completion capital expenditures used in the analysis, and (d) the net debt and preferred equity used in the analysis.

31. With respect to Tudor Pickering's *Discounted Cash Flow Analyses*, the Registration Statement is materially misleading because it fails to disclose: (a) the terminal values used in the analyses, (b) line items used to calculate unlevered free cash flow, (b) the individual inputs and assumptions underlying the discount rate range and multiples range used in the analyses, and (d) the net debt, preferred equity and number of fully-diluted outstanding shares used in the analyses.

32. With respect to Tudor Pickering's *Has/Gets Analysis – NAV Accretion*, the Registration Statement fails to disclose: (a) the estimated fees and expenses related to the Proposed Transaction; (b) the individual inputs and assumptions underlying the discount rates; and (iii) the pro forma share count.

33. With respect to Tudor Pickering's *Equity Research Analysts' Price Targets* analyses, the Registration Statement fails to disclose: (a) the price targets observed in the analyses; and (b) the sources thereof.

34. The omission of this information renders the statements in the "Opinion of Tudor, Pickering, Holt & Co., Cimarex's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

35. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information

in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Cimarex stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

36. Plaintiff repeats all previous allegations as if set forth in full.

37. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

38. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Tudor Pickering. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42. Plaintiff repeats all previous allegations as if set forth in full.

43. The Individual Defendants acted as controlling persons of Cimarex within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cimarex, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Cimarex' stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cimarex, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cimarex stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 10, 2021

**LONG LAW, LLC**

By *s/ Brian D. Long*

Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*